STATE of Wisconsin, Plaintiff-Respondent,

v.

Delano J. O'BRIEN, Defendant-Appellant-Petitioner. †

Supreme Court

*No. 96–3028–CR. Oral argument September 17, 1998.—Decided January 21, 1999.*

(Also reported in 588 N.W.2d 8.)

†Motion for reconsideration is denied with the Per Curiam issued April 29, 1999. See 225 Wis. 2d 247, 591 N.W. 2d 846.

For the defendant-appellant-petitioner there were briefs by *Martin E. Kohler, John C. Thomure, Jr.,* and *Kohler & Hart*, Milwaukee and oral argument by *John C. Thomure, Jr.*

For the plaintiff-respondent the cause was argued by *William C. Wolford*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. JON P. WILCOX, J. The defendant seeks review of a published decision of the court of appeals, *State v. O'Brien*, 214 Wis. 2d 327, 572 N.W.2d 870 (Ct. App. 1997), affirming the judgments of conviction for two counts of third-degree sexual assault and an order denying his motion for post-conviction relief entered by the Circuit Court for Ozaukee County, Joseph D. McCormack, Judge. We affirm the decision of the court of appeals.

¶ 2. There are three issues before us on review: (1) did the circuit court err by applying the physical proximity test to the search warrant of the defendant's premises and by failing to suppress evidence obtained from the search of the defendant's vehicle located nearby; (2) should a criminal defendant be entitled to post-conviction discovery; and (3) was the defendant denied effective assistance of counsel. We hold that the physical proximity test was properly applied and that the reasonable scope of the premises search warrant encompassed the defendant's vehicle. We agree that a criminal defendant has a right to post-conviction discovery when the sought-after evidence would be relevant to an issue of consequence, but this remedy

should not be extended to a case, such as this, where the evidence would not create a reasonable probability of a different outcome. We also conclude that the defendant failed to demonstrate prejudice under his ineffective assistance of counsel claim.

I.

¶ 3.   The relevant facts are not in dispute. In the early morning hours of May 8, 1994, the male victim, an 18-year old, 160 lb. high school senior and state qualifying wrestler, reported to police that the defendant, a 55-year old, 200–230 lb. male, had performed fellatio on him and had anal intercourse with him without his consent. The victim explained that during the previous day, he had been helping the defendant plant trees at the defendant's farm. They were unable to complete the planting before dark, and the victim agreed to stay overnight to finish the planting in the morning. After watching a rental movie, "Robin Hood, Men in Tights," the defendant showed the victim the spare bedroom where he would sleep for the evening. The victim told the police that the defendant came into the spare bedroom and performed fellatio and anal intercourse on him without his consent.

¶ 4.   Once the defendant left the spare bedroom, the victim gathered up some of his things and fled the defendant's home. He drove off in his own vehicle naked from the waist down and flagged down a town marshal. The victim was taken to the sheriff's department for an interview and written statement. He was then transported to a hospital where he was examined, and hair samples, blood samples, penile swabs and anal swabs and smears were taken.

¶ 5.   Later that morning, the police obtained a search warrant and four officers went to the defen-

dant's residence to conduct the search.[1] The defendant's residence was a farmstead consisting of a two-story duplex, a barn, an outbuilding, a small backyard and two driveways. The officers searched the upper level of the duplex which was occupied by the defendant, and one officer walked through the barn and the outbuilding on the property. Located next to the outbuilding, approximately 200 feet west of the home, was a vehicle that was registered to the defendant.[2] The officer opened the door and saw a pair of jeans tucked behind the driver's seat. Detective David Guss, the chief investigator of the complaint, was notified, and Guss removed the jeans from the truck, looked through them and found a pair of underwear in one of the pockets. The items matched those described in the search warrant. The police then arrested the defendant and charged him with two counts of third-degree sexual assault.

¶ 6. Prior to trial, the defendant filed a motion to suppress the jeans and underwear that were recovered from his vehicle.[3] The circuit court denied the motion

---

[1] The search warrant authorized a search of the premises, occupied by the defendant, and described as "1618 Hawthorne Drive - brown in color siding with white trim, two family residence, specifically upper flat with said residence having two driveways." The officers were looking for "a pair of white Hanes 32–34 classic underpants and one pair of blue jeans. . .which may constitute evidence of a crime."

[2] Once at the residence, and prior to the execution of the search warrant, Detective David Guss conducted a license registration check of the vehicle's plates and learned that it was registered to the defendant.

[3] The defendant also filed a motion to compel discovery, specifically the crime lab reports from the victim's examination after the alleged assault. The circuit court conducted an *in camera* review of the reports which were negative as to any external

concluding that in the case of a tenancy, where two or more tenants are sharing the same real estate, those portions of the property that are common to both become part of the curtilage of the place directed to be searched. Because no evidence was introduced allocating any portions of the defendant's property to him or his tenant, excepting the duplex, the court found that the area immediately surrounding the duplex was a common area that he shared with the other tenant and that the premises warrant extended to this curtilage, including the defendant's vehicle.

¶ 7. At trial, the victim testified that the defendant, who had gone to the bathroom, came back into the spare bedroom and climbed into bed with him. The defendant rolled the victim on to his back, sat on his stomach with his head facing the victim's feet, took off the victim's pants and underwear, and performed fellatio on him. The victim stated that he told the defendant to stop several times. When asked if he did anything to get away, the victim stated, "there's not much [he] could do because [the defendant] was sitting on [his] chest. . .[The victim] thought about punching him, but he's a big guy. And [he] didn't think that would work." The defendant testified that the act of fellatio was consensual.

¶ 8. After the defendant got off his chest, the victim turned immediately to his side. According to the victim, the defendant then pushed him onto his stomach and inserted his penis into the victim's anus. Again, the victim testified that he told him to stop, but the defendant continued with the assault. The defendant laid next to the victim for a short time and then

---

signs of trauma. The court concluded that as long as the State did not assert that the victim sustained injuries, the reports would not be furnished to the defendant.

left the spare bedroom at which time the victim left the defendant's home and flagged down a town marshal. The defendant denied having anal intercourse with the victim.

¶ 9. Also at trial, the parties stipulated to the findings in the crime lab report and to the nurse's findings at the hospital. They agreed that Detective Guss would read the contents of those reports to the jury. According to the crime lab report, a trace of semen was found on an external penile swab and on a penile smear, but the possible source was inconclusive. No semen was identified on a second penile smear, an external anal swab, an internal anal swab, anal smears, a saliva standard, the jeans found in the search or the T-shirt taken from the victim. Semen was identified on a white blanket taken from the defendant's residence, and the defendant was noted as a possible source of the semen.[4] Pursuant to the stipulation, Guss also reported that the nurse physically viewed the victim's anus and noted zero lacerations or tears.

¶ 10. A jury found the defendant guilty of two counts of third-degree sexual assault in violation of Wis. Stat. § 940.225(3) (1993–94).[5] The defendant was sentenced to an indeterminate sentence not to exceed

___

[4] Additional findings of the crime lab report included an inconclusive finding of semen located on a quilt; pubic hair combings and a head hair that were consistent with the victim; one hair found on the undressing paper that was dissimilar to the defendant, but inconclusive as to the victim; and no semen was identified on either a saliva standard, jeans, or underpants, found during the search or the T-shirt collected from the defendant. These findings were read to the jury.

[5] All future references to the Wis. Stats. will be to the 1993–94 version of the statutes unless otherwise indicated.

312

30 months on count one and five-years probation on count two, to run consecutively. Both sentences were stayed pending appeal.

¶ 11. Post conviction, the defendant filed a "motion to remove exhibits for purposes of physical testing in anticipation of motion for postconviction relief." The defendant sought to remove and test the blood samples, semen samples and anal swabs and smears taken from the victim. The defendant argued that the evidence would help to prove the victim's consent as to the fellatio charge and to support his denial of anal intercourse. The circuit court denied the motion.

¶ 12. The defendant then filed a motion for postconviction relief alleging ineffective assistance of counsel arguing in part that counsel failed to present testimony of the victim's wrestling history—evidence that the defendant believes is exculpatory. The circuit court also denied that motion concluding that even if the evidence of the victim's wrestling experience had been admitted, the result would not have been different and that trial counsel's strategy was reasonable.[6] The defendant appealed.

¶ 13. The court of appeals affirmed the judgments of conviction and the order denying postconviction relief. The court concluded that the search of the defendant's premises and person was proper and

---

[6] The defendant provided three bases for counsel's allegedly deficient conduct: (1) counsel stipulated to the inconclusive crime lab report; (2) counsel stipulated that there was no physical evidence of trauma to the victim, but allowed, without calling a rebuttal witness, testimony that victims do not always present physical symptoms; and (3) counsel failed to uncover the victim's wrestling experience. The defendant only raises the third issue on appeal before this court.

that the scope of the premises search warrant reasonably included the defendant's vehicle parked in the common area. The court also determined that the exceptions to the general rule against discovery should be extended to post-conviction discovery. The court adopted a materiality standard for removal of evidence post conviction, to be reviewed under the clearly erroneous standard.[7] Finally, the court concluded that the defendant failed to establish that he was prejudiced by the alleged deficiencies in counsel's conduct. This court granted the defendant's petition for review on all three issues.

## II.

¶ 14.    The first issue that we consider is whether the circuit court and court of appeals erred by applying the physical proximity test to the search warrant of the defendant's premises and by refusing to suppress the

---

[7] The court of appeals also set forth guidelines, to be applied prospectively only, that require the party filing the post-conviction discovery request to:

(1)   provide supporting affidavits with the motion which describe the material sought to be discovered and explain why the material was not supplied or discovered at or before trial;

(2)   establish that alternative means or evidence is not already available such that the postconviction discovery is necessary to refute an element in the case;

(3)   describe what results the party hopes to obtain from discovery and explain how those results are relevant and material to one of the issues in the case; and

(4)   after meeting the first three criteria, the party must then convince the trial court that the anticipated results would not only be relevant, but that the results would also create a reasonable probability of a different outcome.

*State v. O'Brien*, 214 Wis. 2d 327, 342, 572 N.W.2d 870 (Ct. App. 1997).

evidence recovered from the defendant's vehicle which was located on the premises. The defendant argues that his vehicle was not part of the curtilage of the premises as specifically described in the warrant. Thus, while the truck may be within the common area of the property, he claims the police were still required to demonstrate probable cause to search the truck for evidence. The State insists that the premises search included the vehicle and was proper.

¶ 15. When reviewing the denial of a suppression motion, we uphold the circuit court's findings of fact unless they are clearly erroneous. Wis. Stat. § 805.17(2); *State v. Whitrock*, 161 Wis. 2d 960, 973, 468 N.W.2d 696 (1991). Whether the facts satisfy the constitutional requirement of reasonableness of a search presents a question of law, which we review independently of the circuit court and court of appeals. *State v. Fry*, 131 Wis. 2d 153, 171, 388 N.W.2d 565 (1986).

¶ 16. The circuit court found that the area outside the defendant's residence, which was not specifically allocated to one tenant or the other, was a common area to both, and as such became part of the curtilage[8] of the premises directed to be searched. According to the court, the defendant's vehicle, which was parked next to the outbuilding, was located in this curtilage, and was subject to the premises warrant.

---

[8] BLACK'S LAW DICTIONARY 384 (6th ed. 1990), in part, defines curtilage:

> For search and seizure purposes, includes those outbuildings which are directly or intimately connected with habitation and in proximity thereto and the land or grounds surrounding the dwelling which are necessary and convenient and habitually used for family purposes and carrying on domestic employment.

315

¶ 17. This finding is supported by the evidence. There is no evidence suggesting that those portions of the farmstead, except for the duplex itself, were specifically allocated to solely the defendant or his tenant. Detective Guss testified that the vehicle was parked approximately 200 feet west of the home, next to the outbuilding. Photos introduced at the suppression hearing confirm that the vehicle was located within the curtilage of the defendant's living quarters, especially in the context of a rural setting. Based on this evidence, we conclude that the circuit court's finding that defendant's vehicle was parked within the common area is not clearly erroneous.

¶ 18. All persons are to be secure from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution and Art. I, § 11 of the Wisconsin Constitution.[9] The two provisions are interpreted in concert, and the development of Wisconsin law on search and seizure parallels that developed by the United States Supreme Court.

---

[9] Article I, § 11 of the Wisconsin Constitution provides:

Searches and seizures. . .The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

*State v. Andrews*, 201 Wis. 2d 383, 389, 549 N.W.2d 210 (1996).

¶ 19.   In the case of a premises warrant, the warrant generally authorizes the search of all items on the premises so long as those items are plausible receptacles of the objects of the search. *Id.* at 389 (citing *United States v. Ross*, 456 U.S. 798, 820–21 (1982)). Courts have utilized different approaches for determining the proper scope of a premises search warrant. *Andrews*, 201 Wis. 2d at 391 (primary approaches are "relationship," "notice" and "physical proximity or possession" tests).

¶ 20.   In *Andrews*, this court adopted the physical proximity test. Under the physical proximity test,

> police can search all items found on the premises that are plausible repositories for objects named in the search warrant, except those worn by or in the physical possession of persons whose search is not authorized by the warrant, irrespective of the person's status in relation to the premises.

*Andrews*, 201 Wis. 2d at 403. Under this test, the cornerstone of the Fourth Amendment, the reasonableness of the search, remains. *Id.*

¶ 21.   The premises warrant in this case authorized the search of the upper flat of the defendant's premises in order to locate a pair of underpants and blue jeans, as well as other items described by the victim. Those two items were not located in the residence, so the detectives extended the search to the buildings nearby. The vehicle was parked next to one of the buildings, approximately 200 feet from the home. The detectives knew that the vehicle was registered to

the defendant, and that the items were small enough to fit inside of it. Because the vehicle was a plausible repository for the objects named in the search warrant, and because the vehicle was in close proximity to the home, we conclude that the detectives search of the vehicle was reasonable.

¶ 22.    The defendant also contends that the physical proximity test, as articulated by the court of appeals, is now without any limitation. He argues that in order to search a large tract of land with several buildings, vehicles and containers, the police will simply insert the word "premises" and the address in the warrant. The State, as expected, counters that the court of appeals' decision did not create unlimited authority for the police to search under a premises warrant. We agree with the State.

¶ 22a.    The defendant's concerns about future abuses by the authorities in obtaining search warrants ignores two bedrock principles of search and seizure law. First, search warrants are not merely filled out by police officers; rather, "[s]earch warrants must be issued by a neutral, disinterested magistrate to whom it has been demonstrated that there is probable cause to believe that the evidence sought will aid in prosecution for a particular offense." *Andrews*, 201 Wis. 2d at 390. Second, the concept of reasonableness must be met. The court must examine the totality of the given circumstances to determine whether the defendant has a legitimate expectation of privacy under the Fourth Amendment. *Whitrock*, 161 Wis. 2d at 973–74. Because the search of the vehicle was reasonable, we affirm.

## III.

¶ 22b.   The second issue that we consider is whether the defendant was entitled to, and was improperly denied, the opportunity to remove exhibits, post conviction, for scientific testing. Our focus here is on the defendant's right to post-conviction discovery.

¶ 22c.   Historically, the right to discovery in criminal cases has been limited to that which is provided by statute. *State v. Miller*, 35 Wis. 2d 454, 474, 151 N.W.2d 157 (1967). Wisconsin Stat. § 971.23 governs the rights to and procedures for discovery in criminal cases. While § 971.23(5)[10] allows for pretrial discovery of scientific evidence, it is uncontested that it does not provide for post-conviction discovery of scientific evidence.

¶ 22d.   Nevertheless, the defendant points out that a judgment of conviction does not terminate the defendant's rights. The defendant argues that when the truth is not discovered prior to or during trial, and post-conviction counsel identifies information which may lead to a fair determination of guilt or innocence, then there should be a process for the defendant to remove the evidence, post conviction, so the matter may be fully litigated. The defendant contends he is entitled to such a process.

---

[10] Wisconsin Stat. § 971.23(5) provides in part:

> On motion of a party subject to s. 971.31(5), the court may order the production of any item of physical evidence which is intended to be introduced at the trial for scientific analysis under such terms and conditions as the court prescribes . . . .

The comments that follow § 971.23 indicate that sub. (5) is limited to items of evidence which are intended to be introduced at trial and either the state or the defendant may move for scientific testing. *Note*, 1969, Wis. Stat. Ann. § 971.23 (West 1985).

¶ 22e. The court of appeals agreed with the defendant's theory, concluding that, as with *in camera* inspections of confidential information, the exceptions to the general rule of discovery should be extended to post-conviction discovery. *O'Brien,* 214 Wis. 2d at 340. The court initially stated, and we believe correctly so, that the party seeking post-conviction discovery must establish that the evidence sought to be gained is material. *Id.* The court also set forth guidelines, to be applied in future cases, but not this one, intended to prevent or limit discovery abuses. *Id.* at 342–43. It, therefore, considered the defendant's claim utilizing the standards set forth for pretrial discovery (discovery decisions governed by a discretionary standard of review). *Id.* at 343.

¶ 23. It is well-established that under the due process clause, criminal defendants must be given a meaningful opportunity to present a complete defense. *State v. Shiffra,* 175 Wis. 2d 600, 605, 499 N.W.2d 719 (Ct. App. 1993) (citing *California v. Trombetta,* 467 U.S. 479, 485 (1984)). In fact, this court in *State v. Hicks,* 202 Wis. 2d 150, 172, 549 N.W.2d 435 (1996), recognized, albeit inferentially, the right of a defendant to utilize post-conviction discovery when the evaluation is of evidence that is "critical, relevant, and material."

¶ 24. "[E]vidence is [consequential][11] only if there is a reasonable probability that, had the evidence

---

[11] In *State v. Sullivan,* 216 Wis. 2d 768, 786 n.15, 576 N.W.2d 30 (1998), this court noted that the concept of consequential fact replaces and is interchangeable with the common law term of materiality. "Material facts are those that are of consequence to the merits of the litigation. Relevancy, in turn, is a function of whether the evidence tends 'to make the existence

been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985) (plurality opinion)); *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Evidence that is of consequence then is evidence that probably would have changed the outcome of the trial. *See Bagley*, 473 U.S. at 682–84 (adopting *Strickland* standard of consequential evidence); *United States v. Agurs*, 427 U.S. 97, 104 (1976) (explaining meaning of consequential evidence). "The mere possibility that an item of undisclosed information might have helped the defense. . .does not establish '[a consequential fact]' in the constitutional sense." *Agurs*, 427 U.S. at 109–110.

¶ 25.  Based on the above-stated principles, we conclude that a defendant has a right to post-conviction discovery when the sought-after evidence is relevant to an issue of consequence. Nevertheless, we decline, at this time, to adopt the guidelines as created by the court of appeals. Rather, we believe that a determination whether evidence is of consequence to the case will limit the remedy of post-conviction discovery to only those situations where it is warranted.

¶ 26.  Turning to this case, the defendant sought further scientific testing on certain samples taken from the victim to help prove that the victim consented to the act of fellatio, and to show that anal intercourse never occurred. The circuit court concluded that it was

of [a material fact] more probable or less probable than it would without the evidence.' " *Michael R.B. v. State*, 175 Wis. 2d 713, 724, 499 N.W.2d 641 (1993)(citation omitted); *see generally* 1974 Judicial Council Committee's Note to Wis. Stat. § 904.01, 59 Wis. 2d R8. We will use the concept of consequential fact.

without authority and reason to grant the defendant's motion for post-conviction discovery. The circuit court noted that Wis. Stat. § 971.23(5) does not provide for the release of evidence, post conviction, for scientific testing. The circuit court also found that little, if any, weight should be given any possible information obtained by such testing; the defendant simply was not prejudiced by not having more scientific testing. Essentially, the circuit court found that the result of the trial would not have been different because the evidence was not material. We will not disturb a circuit court's findings regarding evidentiary facts unless they are clearly erroneous. *State v. Woods*, 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1984).

¶ 27. Even though a criminal defendant should have a right to post-conviction discovery when the sought-after evidence would be consequential to the case, *Hicks*, 202 Wis. 2d at 171, we agree with the circuit court that the sought-after evidence in this case probably would not change the outcome of the trial, *see Bagley*, 473 U.S. at 684. Even if post-conviction testing revealed no blood and no semen, it is simply of no consequence to the outcome of this case. The critical evidence—the victim's testimony that he did not consent to the acts performed by the defendant, coupled with the detective's testimony that the victim, who was half-naked, who appeared very upset and distraught and who was trembling, waved down a town marshal to report the assault—would not be rebutted or weakened by further testing of the samples. Even if testing of the sought-after evidence produced the results the defendant claimed it would, there is not a reasonable probability that the outcome of the trial would be different.

¶ 28. In sum, we hold that a defendant has a right to post-conviction discovery when the sought-after evidence is consequential to the case. We find, however, that this remedy is unwarranted in a case such as this, where the evidence would not create a reasonable probability of a different outcome. We therefore affirm the court of appeals' ultimate determination that post-conviction discovery was unwarranted in this case. We decline, however, to adopt at this time the guidelines that were created by the court of appeals. Rather, we hold that a party who seeks post-conviction discovery must first show that the evidence is consequential to an issue in the case and had the evidence been discovered, the result of the proceeding would have been different.

## IV.

¶ 29. The third issue that we address is whether the defendant was denied effective assistance of counsel. The right to effective assistance of counsel derives from the Sixth Amendment to the United States Constitution, made applicable by the Fourteenth Amendment, and Art. I, § 7 of the Wisconsin Constitution.[12] In order to establish ineffective assistance of

---

[12] Article I, § 7 of the Wisconsin Constitution provides:

In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

The Sixth Amendment to the United States Constitution provides:

counsel, the defendant must prove that counsel's performance was deficient, and that such deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687.

¶ 30.   Under the *Strickland* test, if the defendant has failed to show prejudice, this court need not address the deficient performance prong. *State v. Sanchez*, 201 Wis. 2d 219, 236, 548 N.W.2d 69 (1996). In order to show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. As this court has noted, the touchstone of the prejudice component is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *State v. Smith*, 207 Wis. 2d 258, 276, 558 N.W.2d 379 (1997)(quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).

¶ 31.   The determination of whether particular actions constitute ineffective assistance of counsel is a mixed question of law and fact. *State ex rel. Flores v. State*, 183 Wis. 2d 587, 609, 516 N.W.2d 362 (1994). The circuit court's "determinations of what the attorney did, or did not do, and the basis for the challenged

---

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

conduct are factual and will be upheld unless they are clearly erroneous." *State v. Johnson*, 133 Wis. 2d 207, 216, 395 N.W.2d 176 (1986). However, whether counsel's conduct violated the defendant's right to effective assistance of counsel is a question of law that this court decides without deference to the circuit court and court of appeals. *State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985).

¶ 32. The defendant's ineffective assistance of counsel argument is based on, as he alleges, trial counsel's failure to conduct a proper investigation and learn that the victim was a successful high school wrestler. The defendant argues that the information would have provided compelling evidence that the victim had a special ability to elude the defendant, and it related to the victim's credibility. The defendant insists that he is not arguing that the victim had a duty to resist or to attempt to escape; rather, this evidence, he claims, goes to the victim's credibility—his story that he was pinned does not comport with his background.

¶ 33. The State counters that the circuit court correctly determined that the victim's wrestling experience was not relevant, and that even if it was placed before the jury, the result would not have been any different. The State points out that the real issue in this case is not whether the victim resisted, but whether the victim consented to the sexual contact.

¶ 34. We agree that the defendant has failed to satisfy the prejudice prong of his claim for ineffective assistance of counsel. Despite the defendant's attempt to couch his argument in terms of attacking the credibility of the victim, the victim's ability or inability to ward off the defendant's advances is totally irrelevant to the assault. In Wisconsin, a victim of sexual assault

325

is not required to resist the assault to establish that the act was nonconsensual. *State v. Clark*, 87 Wis. 2d 804, 815, 275 N.W.2d 715 (1979). Thus, whether the victim was a state qualifying wrestler, or had no wrestling experience at all, is completely irrelevant to whether or not he consented to the assault.

¶ 35.    As with most sexual assault cases, the only witnesses to the crime here are the victim and the defendant. In cases like this, the jury's verdict is often a matter of which person the jury finds to be more credible. *See, e.g., State v. Johnson*, 149 Wis. 2d 418, 427, 439 N.W.2d 122 (1989). Here, the defendant relied on consent as a defense to the fellatio charge and denied the charge of anal intercourse. The victim, however, testified that he did not consent to the sexual acts and claimed that he told the defendant to stop numerous times, but was ignored. The jury found the victim's story to be more credible than that of the defendant. It is within the province of the jury to decide issues of credibility, to weigh the evidence and resolve conflicts in the testimony. *State v. Gomez*, 179 Wis. 2d 400, 404, 507 N.W.2d 378 (Ct. App. 1993). The victim's testimony, which was substantiated by the police detectives' testimony, supports the jury's verdict.

¶ 36.    We conclude that even if the jury knew of the victim's wrestling experience, there is no reasonable probability that the outcome of the trial would have been different. Because the defendant has failed to establish prejudice, we affirm the order denying postconviction relief.

¶ 37.    *By the Court.*—The decision of the court of appeals is affirmed.

¶ 38.  ANN WALSH BRADLEY, J. (*concurring*). I agree with the majority opinion that on a post-conviction motion a circuit court may allow a defendant to remove exhibits for scientific testing. The determination of such a post-conviction motion is a matter within the discretion of the circuit court.[1] I also agree with the majority opinion that in this case the defendant's post-conviction motion to remove exhibits for scientific testing was properly denied. However, I do not join Part III of the majority opinion because I conclude that the defendant's motion in this case can easily be resolved by applying the existing evidentiary rules of relevancy.

¶ 39.  The first step that either a circuit court must take in deciding whether to grant such a post-conviction motion or this court must take in reviewing the circuit court's ruling on such a motion is to determine whether the results that the defendant hopes to obtain from the scientific testing would be relevant, non-cumulative evidence.

¶ 40.  "Relevant evidence" is defined by Wis. Stat. § 904.01 (1995–96)[2] as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Further, Wis. Stat. § 904.03 allows a circuit court to exclude relevant evidence "if its probative value is substantially outweighed by. . .needless presentation of cumulative evidence."

---

[1] *See, e.g., State v. McCallum*, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997) (motion for new trial based on newly discovered evidence); *Dudrey v. State*, 74 Wis. 2d 480, 482–83, 247 N.W.2d 105 (1976) (motion for withdrawal of guilty plea prior to sentencing).

[2] Unless otherwise noted, all references to the Wisconsin Statutes are to the 1995–96 version.

¶ 41.   Here, the hoped-for results from testing the exhibit concerning the penile swab and smear collected from the victim would not be relevant evidence under Wis. Stat. § 904.01, and the hoped-for results from testing the exhibit containing the anal swabs and smears collected from the victim would be excluded as needless presentation of cumulative evidence under Wis. Stat. § 904.03. I therefore would hold that the defendant's post-conviction motion was properly denied on the simple basis of existing rules of relevancy.

## I.

¶ 42.   The first exhibit that the defendant sought to remove for post-conviction scientific testing was the penile swab and smear collected from the victim. The trial record established that trace amounts of semen were present on the penile swab and smear but that no conclusion could be drawn as to their source.

¶ 43.   The defendant hoped for a post-conviction test result that would show that the victim was the source of the trace amounts of semen on the penile swab and smear. The defendant argued that such a result would tend to negate count one (third-degree sexual assault by fellatio) because it would establish that the victim had in fact consented to the act.

¶ 44.   In denying the defendant's post-conviction motion, the circuit court and court of appeals correctly concluded that the presence of the victim's semen in the penile swab and smear would not make consent more or less probable. I agree with the circuit court and the court of appeals that the defendant's argument that the presence of the victim's semen on the penile swab proves consent requires a "substantial presumptive leap" and is "purely speculative."

## II.

¶ 45. The second exhibit that the defendant sought to remove for post-conviction scientific testing contained the anal swabs and smears collected from the victim. The test result that the defendant hoped to obtain was that no semen or blood appeared in the anal swabs and smears. The defendant argued that such a test result would tend to negate count two (third-degree sexual assault by anal intercourse) by showing that the defendant and victim had not engaged in anal intercourse.

¶ 46. According to the trial record, no trace of semen was found on the anal swabs and smears collected from the victim; the crime lab report made no reference to the presence of any semen or blood in the anal swabs and anal smears; the nurse conducting the physical examination of the victim's anus noted "zero lacerations or tears." The testimony and the test results were undisputed at trial.

¶ 47. Because the jury was presented with uncontested evidence that there was no semen found in the anal swabs and smears collected from the victim and that the examining nurse physically viewed the victim's anus and noted the absence of lacerations or tears, the post-conviction scientific test results that the defendant hoped to obtain would constitute a "needless presentation of cumulative evidence" under Wis. Stat. § 904.03.

¶ 48. The defendant's motion for post-conviction scientific testing fails to meet rudimentary rules of relevancy. Therefore, no further analysis of this court is necessary to affirm the decision of the court of appeals.

¶ 49.   I am authorized to state that CHIEF JUS-TICE SHIRLEY S. ABRAHAMSON joins this opinion.