COURT OF APPEALS
DECISION
DATED AND FILED

June 11, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1992**

Cir. Ct. No. **2021CF151**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JOSE ALFREDO CASTILLO LIRA,

    DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Clark County: LYNDSEY A.B. BRUNETTE, Judge. *Affirmed.*

Before Blanchard, Kloppenburg, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Jose Alfredo Castillo Lira appeals a circuit court order denying his motion to vacate a conviction for delivering a schedule IV drug and to reopen his case.  Castillo Lira asserts that his trial counsel was ineffective in failing to inform him of the immigration consequences of the plea agreement he accepted.  We conclude that trial counsel's performance, which included hiring an immigration attorney to provide Castillo Lira with an opinion regarding the immigration consequences of the charges against him, was not deficient.  We affirm.

## BACKGROUND

¶2     Castillo Lira was arrested in September 2021 and charged with two counts of delivering and one count of possession with intent to deliver Tramadol, a schedule IV drug.  *See* WIS. STAT. § 961.20(4)(e) (2023-24).[1]  In January 2023, Castillo Lira pled no contest to one count of delivery of a schedule IV drug, and the other counts were dismissed and read in for purposes of sentencing.  The circuit court provided an interpreter for Castillo Lira, whose primary language was Spanish, and conducted a plea colloquy that included the advisement "a plea of guilty or no contest could result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law."  Castillo Lira indicated that he did not have any questions about that warning.  The court accepted the parties' joint recommendation to withhold sentence and place Castillo Lira on probation for three years, with a nine-month conditional jail term.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

¶3      In April 2025, Castillo Lira moved to withdraw his plea, vacate his conviction, and reopen the case.  He was then involved in deportation proceedings, and he asserted that his trial counsel, Zachary Glascock, did not inform him "that the crime to which he was pleading was a mandatory deportable offense."

¶4      The circuit court conducted a ***Machner*** hearing on Castillo Lira's motion at which Attorney Glascock testified as follows.[2]  Glascock retained an immigration attorney to provide an opinion on the immigration consequences of Castillo Lira's case in hopes that the parties could reach a plea agreement avoiding "very bad" immigration consequences for Castillo Lira.  Glascock knew that the U.S. Department of Homeland Security (DHS) had already issued a notice of detainer to Castillo Lira, which Glascock provided to the immigration attorney at the outset of the engagement.  The immigration attorney's opinion letter, which was shared with Castillo Lira and with the State, stated that a conviction on the charges Castillo Lira was facing

> would likely be considered an aggravated felony under immigration law as defined in 8 U.S.C. § 1101(a)(43)(B). The aggravated felony conviction could subject Mr. Castillo to expedited or automatic deportation, i.e., foreclose any defense before an immigration judge.
>
> Finally, a conviction would subject Mr. Castillo to mandatory immigration detention under 8 U.S.C. § 1226(c).

¶5      Glascock discussed this opinion with Castillo Lira with the assistance of an interpreter chosen by Castillo Lira.[3]  Glascock recalled handing a

---

[2]  *See **State v. Machner***, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

[3]  This interpreter was present for all discussions between Glascock and Castillo Lira, and a certified court interpreter was present for all court proceedings.

copy of the opinion to Castillo Lira and that a copy was also emailed to Castillo Lira and Castillo Lira's daughter, an adult U.S. citizen who spoke English, worked as a corporate tax accountant, and intended to petition for her parents' permanent residence in the United States. As recommended in the immigration attorney's opinion, Glascock proposed a plea agreement to the State pursuant to which Castillo Lira would plead to three misdemeanors and "avoid deportation so he [could] continue to provide for and be with his family … in the US." The State did not agree to a misdemeanor resolution. Castillo Lira eventually accepted the State's offer to plead to a single felony count with conditional jail time, believing that the more time he spent in jail, the more likely that deportation proceedings would be initiated. Glascock reviewed the plea questionnaire with Castillo Lira prior to the plea hearing, using the Spanish version of the form. This review included the section on immigration consequences, which states that a conviction could result in deportation. Glascock testified that he always goes over this section with his clients, regardless of their citizenship.

¶6 Castillo Lira also testified at the ***Machner*** hearing. He responded "No" to the question of whether Glascock "at any time explain[ed] to [him] that by accepting the plea [he] would be automatically deported from the United States." He further testified that Glascock told him that "there were going to be consequences but he didn't say … it was going to [require Castillo Lira] to leave immediately." Castillo Lira admitted that he was aware that a conviction would have "negative consequences" on his ability to stay in the United States and that he did not recall everything that Glascock told him regarding immigration issues.

¶7 The circuit court denied Castillo Lira's motion to withdraw his plea, concluding that Castillo Lira did not meet his burden to show ineffective assistance of counsel. The court noted that Glascock was aware that DHS had

issued a notice of detainer even before Glascock began his representation of Castillo Lira, which indicated that potential immigration consequences were being considered from the very beginning, and that Glascock "went to the extra step of obtaining an immigration attorney" to provide an opinion. The court also credited Glascock's testimony that "he may not have used the exact language of automatic removal, but … he certainly went over on numerous occasions the risk of deportation" and pointed out that "[t]here was no testimony that [the interpreter chosen by Castillo Lira] was insufficient to meet the needs between the attorney and the client" or "that there were any communication barriers." Castillo Lira appeals.

## DISCUSSION

¶8      After sentencing, a defendant seeking to withdraw a guilty or no-contest plea bears the burden of establishing by clear and convincing evidence that failure to withdraw the plea amounts to a manifest injustice. *State v. Thomas*, 2000 WI 13, ¶16, 232 Wis. 2d 714, 605 N.W.2d 836. Given that the presumption of innocence no longer exists after such a plea is accepted by the court, we will not disturb the plea unless a defendant satisfies the high standard of showing a serious flaw in its fundamental integrity. *Id.*

¶9      Demonstrating that a defendant's counsel rendered ineffective assistance, as Castillo Lira attempts to do, is one way to show a manifest injustice. *See State v. Krieger*, 163 Wis. 2d 241, 253, 471 N.W.2d 599 (Ct. App. 1991). A defendant seeking to withdraw a plea post-sentencing on this basis must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *State v. Bentley*, 201 Wis. 2d 303, 311-12, 548 N.W.2d 50 (1996). The defendant must establish that counsel's performance was both deficient—that is, falling

outside the range of objectively reasonable attorney representation—and prejudicial, meaning adversely affecting the outcome of the proceeding. *See State v. Mull*, 2023 WI 26, ¶¶35, 37, 406 Wis. 2d 491, 987 N.W.2d 707.

¶10    Whether trial counsel's actions constitute ineffective assistance is a mixed question of fact and law. *State v. O'Brien*, 223 Wis. 2d 303, 324, 588 N.W.2d 8 (1999). We uphold the circuit court's findings of fact unless they are clearly erroneous. *Id.* at 324-25. Whether counsel's conduct amounted to ineffective assistance is a question of law that we review independently. *Id.* at 325.

¶11    The issue before us is whether, under *Padilla v. Kentucky*, 559 U.S. 356 (2010), and its progeny, Glascock sufficiently advised Castillo Lira of the risk of deportation that would result from his plea. "[A]n attorney's advice must be adequate to allow a defendant to knowingly, intelligently, and voluntarily decide whether to enter a guilty plea." *State v. Shata*, 2015 WI 74, ¶77, 364 Wis. 2d 63, 868 N.W.2d 93. In *Padilla*, the United States Supreme Court concluded that counsel has an obligation to advise a client of the immigration consequences of entering a guilty plea. 559 U.S. at 359-60. The court further determined that prevailing professional norms supported the view that counsel should give correct advice as to the risk of adverse immigration consequences when those consequences are clear. *Id.* at 369. The court concluded that counsel's inaccurate advice to the defendant in that case that he "did not have to worry about immigration status" constituted constitutionally deficient performance. *Id.* at 359-60.

¶12    Our state supreme court applied *Padilla* in *Shata*, 364 Wis. 2d 63, ¶5, and determined that trial counsel did not perform deficiently in advising a

defendant that he faced a "strong chance" of deportation as a result of a guilty plea rather than telling the defendant that the plea would "absolutely result in deportation." Similarly, in *State v. Villegas*, 2018 WI App 9, ¶¶11, 32, 380 Wis. 2d 246, 908 N.W.2d 198, this court determined that counsel did not perform deficiently in advising a defendant that pleading guilty could result in deportation—"in the 99 percentile range" of probability—and subsequent inadmissibility to the United States rather than the more specific advice that the plea would result in "clear, automatic, irreversible, and permanent inadmissibility." The *Villegas* decision reiterates the *Padilla* court's statement that "[i]mmigration law can be complex, and it is a legal specialty of its own"; criminal defense attorneys are not expected to function as immigration lawyers. *Villegas*, 380 Wis. 2d 246, ¶29 (quoting *Shata*, 364 Wis. 2d 63, ¶63 (quoting *Padilla*, 559 U.S. at 359)).

¶13     With this case law in mind, we turn to Castillo Lira's arguments. Castillo Lira does not deny that he received the immigration attorney's written opinion advising that a conviction on the charges he faced could make him subject to "expedited or automatic deportation," but he argues that "[t]he letter from the immigration lawyer was never translated for [him]." In view of the circuit court's factual findings that Glascock counseled Castillo Lira "on the opinions provided in that immigration attorney's letter" and that there were no "communication barriers" between counsel and client with the assistance of Castillo Lira's chosen interpreter, and given Glascock's uncontroverted testimony that "the client was aware of the immigration attorney's opinions," it does not appear significant that the immigration attorney's opinion may not have been translated by the interpreter or by Castillo Lira's daughter, who also received a copy by email. The fact that Castillo Lira was aware of the substance of the opinion and the negative

immigration consequences of a conviction is supported by this hearing testimony and by Castillo Lira's apparent motivation to accept a plea agreement that minimized jail time, which he believed would lower the chances that "DHS would pick him up and engage in deportation proceedings."

¶14     In addition, the circuit court credited Glascock's testimony that he discussed the immigration consequences of a no-contest plea with Castillo Lira when reviewing the Spanish version of the plea questionnaire with him through an interpreter.  Castillo Lira points out that the bullet point next to the immigration portion of the questionnaire was not circled like the ones appearing next to other sections, but he does not show that the court's finding was clearly erroneous, especially in light of Glascock's "adamant" testimony "on numerous occasions throughout direct and cross that he did review that" portion of the form with Castillo Lira.[4]   Castillo Lira does not address the fact that he responded affirmatively in court that he understood the court's warning that "a plea of guilty or no contest could result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law."

¶15     Castillo Lira argues that while he was informed "that he *could* be deported" as a result of his plea, Glascock did not inform him that he "was *going to* be deported."  Emphasizing Glascock's testimony that he advised Castillo Lira that he would be "permanently inadmissible" but did not necessarily use the term "mandatory deportation," Castillo Lira states in his reply brief that had he received

---

[4] In his affidavit accompanying his motion, Castillo Lira averred that "at no time did anyone explain to [him] that the plea waiver had a warning about potential deportation."  This averment that Castillo Lira was not told the plea waiver form *contained the warning* does not contradict Glascock's testimony that he discussed *the warning* itself that, under 8 U.S.C. § 1227, a person convicted of violating a law relating to a controlled substance "is deportable."

the advice of Villegas's counsel "that there was a 99 percent chance [he] would be deported, then the concept of mandatory deportation would have been sufficiently discussed." *See Villegas*, 380 Wis. 2d 246, ¶11.

¶16 Even beyond the fact that the immigration attorney's opinion received by Castillo Lira did state that "a conviction would subject [Castillo Lira] to mandatory immigration detention," Castillo Lira seems to suggest that whatever advice or warning he received from Glascock, the immigration attorney, and the circuit court, was insufficient because it was not definitive or certain enough. As this court noted in *Villegas*, however—a case in which the defendant similarly argued that "he knew deportation was a possibility but denied ever being told that deportation was 'virtually … certain'"—there are "obvious problem[s] that could arise by making such a bold prediction on immigration consequences that turns out to be wrong." *Id.*, ¶¶14, 30.

> [I]ncorrect advice that a plea *will* result in deportation or exclusion, like incorrect advice that a plea *will not* result in deportation or exclusion, could impact … decisionmaking. The former kind of misinformation might encourage a defendant to reject a beneficial plea offer and thereby subject [the defendant] to significantly more exposure.

*Id.*, ¶30 (quoting *State v. Ortiz-Mondragon*, 2015 WI 73, ¶62, 364 Wis. 2d 1, 866 N.W.2d 717). "[D]eportation depends at least in part on [the] prosecutorial discretion" of the executive branch of the federal government. *Villegas*, 380 Wis. 2d 246, ¶34; *see also Shata*, 364 Wis. 2d 63, ¶71 (requiring counsel to render advice that a defendant absolutely would be deported as a consequence of a plea "would be incorrect because a defense attorney does not control and cannot know with certainty whether the federal government will deport an alien upon conviction").

## CONCLUSION

¶17     We conclude that Glascock's performance was not deficient under the controlling case law discussed above.  We affirm on that basis.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.