COURT OF APPEALS
DECISION
DATED AND FILED

November 4, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1723**

STATE OF WISCONSIN

Cir. Ct. No. 2007CF1274

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

CHEVELE DONTE LYONS,

    DEFENDANT-APPELLANT.

            APPEAL from orders of the circuit court for Racine County: JON E. FREDRICKSON, Judge. *Affirmed*.

            Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

            **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Chevele Donte Lyons appeals from orders denying his motions for reconsideration. We previously determined that an appeal of the circuit court's order denying Lyons' motion for postconviction relief under WIS. STAT. § 974.06 (2017-18)[1] was untimely as it was filed more than ninety days after entry of the order and, therefore, we lacked jurisdiction to review the order. *See* WIS. STAT. § 809.10(1)(e). We now conclude that Lyons' motions for reconsideration present only one new issue not presented in the postconviction motion: a ***Brady***[2] violation claim. Addressing only that issue, we conclude that Lyons' claim is meritless and affirm.

## BACKGROUND

¶2 On October 4, 2007, Lyons was charged in a criminal complaint— along with five codefendants—with multiple felonies as a result of an armed robbery and the death of Antonio Strong.[3] The case proceeded to a five-day trial, and Lyons was found guilty and convicted of felony murder, burglary, and false

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version.

[2] ***Brady v. Maryland***, 373 U.S. 83 (1963). Under ***Brady***, the defendant's due process rights are violated where the state suppresses material evidence favorable to the defendant. ***Id.*** at 87.

[3] The State charged Lyons with first-degree intentional homicide, WIS. STAT. § 940.01(1); burglary, WIS. STAT. § 943.10(1)(f); armed robbery, WIS. STAT. § 943.32(2); and false imprisonment, WIS. STAT. § 940.30. All charges were as party to a crime.

imprisonment.[4]  Lyons was sentenced to forty-five years' initial confinement (IC) and eighteen years' extended supervision (ES) on all charges.[5]

¶3      Lyons filed a postconviction motion to vacate the felony murder charge, arguing a structural error at trial because the court did not provide a not guilty verdict form for the felony murder charge.  The circuit court denied the motion, and this court summarily affirmed the judgment of conviction and the order denying Lyons' postconviction motion.  *State v. Lyons*, No. 2010AP3024-CR, unpublished slip op. and order (WI App Aug. 23, 2011).

¶4      Lyons filed a second postconviction motion[6] pursuant to WIS. STAT. § 974.06 on September 5, 2018, seeking discovery and to vacate the judgment of conviction, or, in the alternative, resentencing.  In that motion, Lyons alleged that he was deprived of his right to effective assistance of counsel as his trial counsel "was ineffective for not having two bullets recovered from the body of the victim tested, and for not objecting and correcting the factual errors at sentencing."  He also argued that his first postconviction counsel was ineffective for failing to file a motion pursuant to *State v. O'Brien*, 223 Wis. 2d 303, 588 N.W.2d 8 (1999), for

---

[4] Lyons was also found guilty of armed robbery, but that charge was dismissed as it served as the predicate felony for the felony murder charge.

[5] Lyons received forty years' IC and thirteen years' ES on the felony murder charge; five years' IC and five years' ES on the burglary charge, consecutive to the felony murder charge; and two years' IC and two years' ES on the false imprisonment charge, concurrent to the other sentences.

[6] Although there were two postconviction motions filed in this case, for ease of reading we will refer to the second postconviction motion as the postconviction motion.

postconviction discovery,[7] and pursuant to WIS. STAT. § 809.30(2)(h) or WIS. STAT. § 974.02, claiming that the sentencing court relied on inaccurate information. The allegedly inaccurate information was that "Lyons used the firearm that caused the fatal gunshot wound to the victim," which the sentencing court used as an aggravating factor, resulting in a significantly higher sentence than any of Lyons' codefendants.

¶5 The circuit court held a hearing and denied the postconviction motion. The court concluded that the two bullets recovered from the victim were in fact tested, and the trial testimony from a ballistics expert revealed that the fatal bullet was fired from a 9mm Hi-Point handgun. The court also rejected Lyons' claims of ineffective assistance of counsel, explaining that the sentencing court did not rely on inaccurate information. The evidence at trial indicated that multiple guns were used in the crime and there was conflicting testimony as to whether Ryan King—a codefendant—also shot Strong, but "[a]ll witnesses that saw the shooting … agreed that Mr. Lyons was a shooter." According to the circuit court, the arguments presented were frivolous and neither were "clearly stronger" than the argument Lyons' first postconviction counsel actually filed. *See **State v. Romero-Georgana***, 2014 WI 83, ¶¶45-46, 360 Wis. 2d 522, 849 N.W.2d 668.

¶6 Lyons filed a motion for reconsideration. He argued that it was error that "Lyons was sentenced to more time because he was the killer," as the evidence revealed that Strong was killed by a bullet from a Hi-Point handgun and "[a] Hi-Point was in the hands of Mr. King and a Ruger was in the hands of

---

[7] At the postconviction motion hearing, current counsel indicated that he was not proceeding on the ineffective assistance of counsel claims, and prior counsel did not testify.

Mr. Lyons." The circuit court denied the motion as merely "rehash[ing] arguments previously made, and rejected."

¶7 Lyons then filed a second, or supplemental, motion for reconsideration, explaining that "Lyons failed to state [in his previous motion for reconsideration] that because the State had information that the fatal bullet was fired by Ryan King and not Lyons, and the State failed to provide that information to the defendant, the State is guilty of a *Brady* violation." The information Lyons claims the State failed to provide was a document titled "Evidence Release-Return," which Lyons argues was sent to counsel for the first time only days before the postconviction motion hearing. That form, Lyons argues, showed that Lyons was not the killer. The circuit court denied the second motion for reconsideration, stating that "the premise of [Lyons'] argument fundamentally misstates the evidence presented at trial." Lyons appeals.

## DISCUSSION

¶8 Lyons filed his notice of appeal on September 12, 2019, indicating that he was appealing from the circuit court's order denying his motion for postconviction relief, entered on May 30, 2019; the order denying his motion for reconsideration, entered on July 11, 2019; and the order denying his supplemental motion for reconsideration, entered September 9, 2019. This court entered an order on October 28, 2019, concluding that we lacked jurisdiction to review the May 30, 2019 postconviction order. We further indicated that it was "unclear from the record before us whether the motions for reconsideration denied in the July 11 and September 9, 2019 orders presented issues which could have been raised in an appeal from the May 30, 2019 order" and ordered the parties to

address whether we have jurisdiction to review the reconsideration orders as the first issue in their appellate briefs.

¶9      In order for this court to maintain jurisdiction over an appeal from the denial of a motion for reconsideration, the motion must raise issues separate from those determined in the order from which reconsideration was sought. *See Silverton Enters., Inc. v. General Cas. Co. of Wis.*, 143 Wis. 2d 661, 665, 422 N.W.2d 154 (Ct. App. 1988); *Ver Hagen v. Gibbons*, 55 Wis. 2d 21, 25-26, 197 N.W.2d 752 (1972) (explaining a motion for reconsideration "must present issues other than those determined by the order or judgment for which review is requested in order to appeal from the order entered on the motion for reconsideration"). In order to resolve this jurisdictional issue, we apply the "new issues test" by comparing the issues raised in the motions for reconsideration with the issues disposed of in the order denying the postconviction motion. *See Harris v. Reivitz*, 142 Wis. 2d 82, 87-89, 417 N.W.2d 50 (Ct. App. 1987). We are to apply this test liberally, but our jurisdiction is limited to only the new issues presented on reconsideration. *See id.* at 86-89. Whether there is a new issue "presents a question of law that this court reviews de novo." *State v. Edwards*, 2003 WI 68, ¶7, 262 Wis. 2d 448, 665 N.W.2d 136.

¶10      Our review indicates that we lack jurisdiction over all the arguments contained in Lyons' motions for reconsideration, except his argument with respect to the *Brady* violation. It is clear based on the new issues test that Lyons raised the same issue in his postconviction motion as he did in his first motion for reconsideration—that the circuit court sentenced Lyons based on inaccurate information—and that issue was ruled on in the circuit court's order denying Lyons' postconviction motion. The circuit court acknowledged this fact when it denied the motion as "rehash[ing] arguments previously made, and rejected." On

appeal, Lyons argues that "[t]he new issue was that instead of there merely being no evidence that Lyons filed the fatal shot, there was now evidence that Ryan King fired the fatal shot."

¶11     First, that was not a new issue as counsel expressly argued at the postconviction motion hearing that "the Hi-Point was the one that made the fatal shot, and the Hi-Point was in the hands of Mr. King," and the court discussed the issue at length. Second, the distinction Lyons now makes between his arguments is one without difference. *See* **State v. Crockett**, 2001 WI App 235, ¶15, 248 Wis. 2d 120, 635 N.W.2d 673 ("Rephrasing the same issue in slightly different terms does not create a new issue."). No matter who Lyons puts the lethal weapon in the hands of, his argument remains the same:  he was not the individual responsible for the fatal shot and it was inaccurate to sentence him to a longer sentence based on that fact. This issue was addressed at the hearing and in the order denying the postconviction motion and could have been raised in an appeal of that order. Accordingly, as Lyons' first motion for reconsideration did not raise a new issue, we lack jurisdiction to review the order denying that motion.

¶12     In Lyons' second motion for reconsideration, he claimed a **Brady** violation based on the State's alleged failure to provide the Evidence Release-Return document to the defense. As an initial matter, we question the timing of Lyons' motion as he admits that the allegedly suppressed document was provided to him prior to the postconviction motion hearing, yet he failed to address a **Brady** violation at the hearing or in the first motion for reconsideration. This prompted him to file what Lyons strategically named a "supplementary" motion for reconsideration, perhaps implicitly acknowledging that his claim could and should have been brought previously as he admitted he "failed to" make the argument. Further, while the motion purportedly alleges a **Brady** violation, the argument is

far from developed, and the motion appears to address the ***Brady*** violation in terms of the inaccurate information sentencing argument again.

¶13     Despite these concerns, our case law instructs us to apply the new issues test liberally; therefore, we conclude that Lyons' ***Brady*** violation claim is the only new issue Lyons presents in his motion for reconsideration and we have jurisdiction to review this claim, and only this claim.[8]  *See **Reivitz***, 142 Wis. 2d at 86-89.  We conclude, however, that Lyons failed to establish a ***Brady*** violation.

¶14     Criminal defendants have a due process right to favorable evidence "material either to guilt or to punishment" in the possession of the state.  ***Brady v. Maryland***, 373 U.S. 83, 87 (1963).  We review an alleged ***Brady*** violation by accepting the circuit court's findings of fact unless those findings are clearly erroneous, but we review whether a due process violation occurred de novo.  ***State v. Wayerski***, 2019 WI 11, ¶35, 385 Wis. 2d 344, 922 N.W.2d 468.  "A ***Brady*** violation has three components:  (1) the evidence at issue must be favorable to the

---

[8] As the State argues, Lyons failed to address in his motion whether there was a sufficient reason for his failure to raise a constitutional issue in a postconviction motion that could have been raised on direct appeal or in a previous postconviction motion.  *See **State v. Escalona-Naranjo***, 185 Wis. 2d 168, 185, 517 N.W.2d 157 (1994).  Lyons argues that he "failed to raise this ***Brady*** claim because the State had information that the fatal bullet was tested and fired by King and failed to provide that information to Lyons through both his trial counsel and postconviction counsel."  We assume this is his "sufficient reason," but Lyons never made an argument to the circuit court and the court did not directly rule on this issue.  On appeal, Lyons argues only that his claims are not barred by ***Escalona*** pursuant to ***State v. Coffee***, 2020 WI 1, 389 Wis. 2d 627, 937 N.W.2d 579, which held that a defendant does not forfeit his ability to later challenge previously unknown, inaccurate information first raised by the state at sentencing and that the claim may be brought in a postconviction motion.  *Id.*, ¶¶2-3.  ***Coffee***, however, is inapplicable as it did not involve an ***Escalona*** issue because Coffee's challenge was not made in a subsequent WIS. STAT. § 974.06 motion.  For purposes of this appeal and in the interest of finality, we assume, without deciding, that the alleged failure of the State to provide the document and Lyons' resulting lack of awareness of its existence was a sufficient reason for Lyons' failure to raise the issue previously.

accused, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material." *Wayerski*, 385 Wis. 2d 344, ¶35. Like the prejudice prong of *Strickland v. Washington*, 466 U.S. 668 (1984), "[e]vidence is not material under *Brady* unless the nondisclosure 'was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.'" *Wayerski*, 385 Wis. 2d 344, ¶36 (citation omitted).

¶15     First, as the State argues, Lyons presents no evidence that the Evidence Release-Return document was actually suppressed by the State. While he claims that the document was provided at some point before the postconviction motion hearing, he provides no evidence to support that proposition, such as an affidavit from Lyons or Lyons' prior trial or postconviction counsel indicating that the document was not previously received. Even if we were to assume that the evidence was actually suppressed by the State, however, we cannot say that Lyons has shown that the evidence was "material" to the case.

¶16     According to Lyons, "[t]he importance of the Evidence Release-Return is that it linked Item Z in the [ballistic expert's] report, which [the ballistic expert] stated was fired from a Hi-Point gun, to Bullet 001 which the coroner stated was the fatal shot taken from the victim's abdomen." This document, Lyons argues, proved that King was the person who fired the fatal shot. As the circuit court explained, the trial testimony of the medical examiner established that "Wound No. 4" was "a penetrating gunshot wound of the abdomen"—the only wound to the abdomen—and was "the one that did the damage," the "fatal shot." The medical examiner testified that "Exhibit No. 97" was "the bullet that passed through the abdomen." The ballistics expert then testified that "Exhibit 97" "was assigned the Item Letter Z for identification purposes." He explained Item Letter

Z, along with at least one other bullet tested, were "fired through the same firearm barrel" and were consistent with a "Hi-Point" handgun. He further noted that "in my opinion two of the fired [bullets] … could have been fired in a Hi-Point, but not this particular Hi-Point" that was recovered, meaning that there might have been more than one Hi-Point gun utilized in the crime.[9] According to the ballistics expert, at least two handguns were used, and "there could be four," as he could not "put a cartridge case with a bullet."

¶17 Based on this testimony, the Evidence Release-Return document provides no new evidence that is favorable to Lyons. We fail to see how it was somehow material that "Item Z" was inventoried as "001."[10] As the State and the circuit court explained, the trial testimony established that Exhibit 97/Item Letter Z was from the victim's abdomen, the bullet in the abdomen was the fatal shot, and that bullet was likely fired from a Hi-Point handgun. The document does not establish that Lyons did not fire the fatal shot that killed Strong and provides nothing more than what was already established at trial. The document is not

---

[9] King was linked to the Hi-Point handgun through the testimony of a codefendant who testified that both King and another codefendant had Hi-Point handguns and that Lyons also had a handgun, but he did not "get a look at it" and only "heard talk about it." Later, after testifying that he did not see the gun, the codefendant testified that Lyons had a "P 89," also known as a Ruger P89. The codefendant testified that he only saw King and Lyons shooting the victim. This testimony contradicted the testimony of Y.K., one of the victims, who said that King held her at gunpoint in her bathroom during the crime. Another codefendant also testified that King held Y.K. in the bathroom and never changed his location. As the circuit court properly indicated, the issue came down to the credibility of the witnesses.

[10] The best we can tell is that Lyons believed that the Evidence Release-Return document provided the connection between the medical examiner's "Supplementary Incident Report," which identifies the two "projectiles" removed from the body as being "inventoried as item 001" and "002," and the ballistic expert's "Report of Laboratory Findings," referencing "items Z & AF." This connection, however, was established through testimony at trial.

material. Accordingly, Lyons' **Brady** violation argument is without merit, and we affirm the order of the circuit court denying his second motion for reconsideration.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11