**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 21, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.     2023AP327-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021CF111

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

TODD M. TUECKE,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and orders of the circuit court for Grant County: CRAIG R. DAY, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   In this criminal case, the State alleged that Todd Tuecke stole from his former employers while working at their family owned and

operated flooring and cabinetry supplier ("the company"). Following a three-day trial, a jury found Tuecke guilty on five theft charges: four misdemeanors and one felony. Tuecke appeals the judgment of conviction and orders of the circuit court denying postconviction relief and for restitution.[1] Tuecke challenges the following circuit court actions: the court's handling of his requests, made both before and during trial, for orders compelling a co-owner of the company to produce records; the court's denial of his postconviction request for an order compelling production of records from the co-owner; and the court's denial of post-trial motions. We reject each argument and accordingly affirm.

## BACKGROUND

¶2 In May 2021, the State filed a criminal complaint alleging that Tuecke, while working as the company's flooring manager, stole from his employers on six occasions between July 2018 and July or August 2020.[2] Tuecke became flooring manager in 2011 or 2012 and he stopped working at the company in late August 2020.

---

[1] Tuecke does not challenge any aspect of the restitution order in this appeal.

[2] The amended information charged two forms of theft, as the circuit court properly explained in instructing the jury. Five counts charged violations of WIS. STAT. § 943.20(1)(a) (2021-22), which in pertinent part prohibits "[i]ntentionally … transfer[ring] … movable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property." One count charged a violation of § 943.20(1)(b), which in pertinent part prohibits one who, "[b]y virtue of his or her … employment," has "possession … of money" belonging to another, "intentionally … retains possession of such money … without the owner's consent, contrary to his or her authority, and with intent to convert [the money] to his or her own use." No issue is raised in this appeal based on the difference between these two forms of theft.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

¶3     The prosecution's theory was that Tuecke unlawfully transferred or retained for himself money or property that customers of the company had provided or offered to Tuecke while he was working at the company. According to the prosecution, in each incident Tuecke "manipulat[ed]" the company's system for invoicing jobs in order to attempt to receive money or property from customers and kept "money that he should not keep." In one instance Tuecke allegedly "bartered" with a company customer for an arrangement under which Tuecke would personally accept a sauna for his personal use from the customer in lieu of paying the company for tile that was installed in the customer's residence.

¶4     Tuecke testified extensively at trial, as did a person we identify here as A.B., one co-owner of the company.[3] The defense argued at trial that each of the charged counts "rests on [A.B.] saying, I never got the money" that was paid to the company by customers. The prosecution could not prove its case, according to the defense, because "[t]here's nothing to back that up" in the way of evidence, including sufficient documentary evidence. According to the defense, after Tuecke left the company, A.B. noticed "a couple of anomalies" in transactions that Tuecke had handled and as a result A.B. went "fly[ing] out of control" and reported thefts to the police, who conducted an inadequate investigation.

¶5     The jury found Tuecke guilty on four of the five misdemeanor counts and the one felony count; it found him not guilty on Count Two. Tuecke filed motions for various types of relief after trial and after conviction, all of which were denied by the circuit court. Tuecke now appeals.

---

[3] We refer to victims by initials that do not correspond to their actual initials. *See* WIS. STAT. RULE 809.86(4).

# DISCUSSION

## I.     MOTIONS TO COMPEL PRODUCTION BEFORE AND AT TRIAL

¶6     Tuecke argues that the circuit court erred before and during trial in failing to require A.B. to produce "material, exculpatory evidence" that Tuecke "needed in order to avail himself of his constitutional due process right to a meaningful opportunity to present a complete defense." We now provide further pertinent background and then explain why we reject this argument.

### A.  Additional Background

*Pretrial events*

¶7     Tuecke filed a pretrial motion for an order compelling "either the State or [A.B.] … to produce business records" of the company "from January 1, 2018 to August 25, 2020, including accounting, invoices, and inventory records."[4] As supporting authority, Tuecke cited ***Pennsylvania v. Ritchie***, 480 U.S. 39 (1987), as well as ***State v. Shiffra***, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), and ***State v. Green***, 2002 WI 68, 253 Wis. 2d 356, 646 N.W.2d 298. Both ***Shiffra*** and ***Green*** would be overruled in ***State v. Johnson***, 2023 WI 39, 407 Wis. 2d 195, 990 N.W.2d 174, approximately one month before Tuecke filed his opening brief in this appeal. It was of course reasonable for Tuecke in the circuit court to rely on ***Shiffra*** and ***Green***, since they were still good law.

---

[4] Although this motion requested an order requiring the prosecution or A.B. to produce these company records, it was not disputed in the circuit court and is also not disputed on appeal that the prosecution did not possess these records. Tuecke's consistent focus has been on what A.B. did or did not produce, or should have been required to produce, on behalf of the company.

¶8     In September 2021, the circuit court granted the motion by directing A.B. to produce specified records, noting that in the event that A.B. failed to comply with this direction, the court would consider appropriate next steps.[5]

¶9     A.B. later testified that he complied with this order by providing to Tuecke's counsel six "bankers boxes" that contained "source documents for all of our flooring materials and/or business," "invoices" for flooring sales, and "all of the individual [customer] files."    A.B. testified that the search involved "grabb[ing] everything" in company records related to flooring sales for the previous two-and-one-half years.  He further testified that the contents of the boxes included "hundreds and hundreds" of carbon copies of invoices.

¶10    On November 5, 2021, Tuecke filed a motion ("the November 2021 motion") for an order "either prohibit[ing] or limit[ing]" A.B.'s trial testimony, on the ground that the boxes produced by A.B. did not include "anything that could

---

[5] The court's order stated in pertinent part:

> a. [A.B.] shall provide the following records from [the company for] the time period of January 1, 2018 to August 25, 2020:
>
>> 1) Flooring inventory records.
>>
>> 2) Job files for all flooring jobs.
>>
>> 3) Income and Expense records for the flooring division.
>
> b. [Stating a protective order not relevant to any issue raised on appeal.]
>
> c. [A.B. and the company] must provide the records described in paragraphs 2.a.1-3 of this order by October 15, 2021 or elect to not produce the records.
>
> d. If [A.B. and the company] elect to not produce the records, the court will schedule further proceedings.

be described as income or expense records" of the company. As with his prior motion, Tuecke cited *Ritchie*, *Shiffra*, and *Green* as legal authority for the November 2021 motion. Tuecke argued that, if A.B. possessed these records and failed to produce them, the circuit court should preclude A.B. from testifying at trial. In the alternative, Tuecke argued, if the records did not exist, A.B.'s "testimony should be excluded or restricted because it is not reliable or credible." Explaining this last point further, the motion stated in part: "If there is no accounting from [the company] about money that may have come into the business and what accounts or expenses it was applied to, [A.B.'s] testimony that he reviewed records and concluded [that Tuecke] failed to reimburse the business are not reliable statements."[6]

¶11    In December 2021, the circuit court held an evidentiary hearing to address the November 2021 motion. The only witness was A.B., who testified in part as summarized *supra*, ¶9. He also testified that it was suspicious that invoices could not be found for some of Tuecke's jobs, supporting the inference that

---

[6] Also in November 2021, Tuecke subpoenaed A.B. for the production of a broader set of records than those covered by the circuit court's September 2021 order. The circuit court issued a protective order that in essence quashed the subpoena. For the following three reasons, we do not address the subpoena or the circuit court's order in response. First, Tuecke has abandoned any related argument on appeal. *See* **A.O. Smith Corp. v. Allstate Ins. Cos.**, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the [circuit] court, but not raised on appeal, is deemed abandoned."). Second, Tuecke fails to reply to the State's observation on appeal that we should ignore the subpoena and resulting order because the record does not include a copy of the subpoena or a transcript from a hearing on November 24, 2021, at which the court addressed the subpoena. **United Coop. v. Frontier FS Coop.**, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in respondent's brief may be taken as a concession). Third, and closely related to the second reason, the record apparently does not include a copy of the subpoena or a transcript from the November 24 hearing. *See* **State v. McAttee**, 2001 WI App 262, ¶5 n.1, 248 Wis. 2d 865, 637 N.W.2d 774 (appellant is responsible for completeness of the appellate record; when the record is incomplete in connection with an issue raised by the appellant, we assume that the missing material supports the circuit court's ruling).

Tuecke stole customer funds entrusted to him as a company employee. At the conclusion of A.B.'s testimony, the prosecutor represented that, based on various references A.B. had made during the hearing, the prosecutor would obtain from A.B. and produce to the defense some additional company records.

¶12     The following exchange then occurred:

> THE COURT: So in light of what we've learned today, [Tuecke's counsel], do you have any requests for further discovery?[7]
>
> [DEFENSE COUNSEL]: I think what I learned today is I don't think that anything else exists for me to even ask for. So I'm not satisfied, but I don't think there's anything to do about that.

Defense counsel did not elaborate on what left him "not satisfied." Shortly after this, the court asked both sides if they had any additional points to raise and both responded no.

¶13     After Tuecke retained new counsel in March 2022, the new counsel filed a motion on October 5, 2022, three weeks before trial. This motion sought an order

---

[7] "Discovery" generally refers to the production that one party is obligated to make, or in any case does make, of material in the possession of that party to another party in litigation, including the materials that the State produces to the defense in a criminal prosecution. *See* **State v. Schaefer**, 2008 WI 25, ¶¶22-23, 308 Wis. 2d 279, 746 N.W.2d 457 (discussing pretrial statutory discovery obligations of the State to criminal defendants, as well as the State's constitutional obligation to produce material, exculpatory evidence in the State's possession under authority that includes **Brady v. Maryland**, 373 U.S. 83 (1963)). But here, the circuit court used "discovery" to refer to evidence in the possession of A.B. (who is not a party in this case), and not to evidence in the possession of the State. The parties on appeal both use "discovery" the same way. We recognize that "pretrial discovery" is sometimes loosely used, as the circuit court and the parties have here, to mean something like "all information to which a party is entitled or that a party seeks to obtain."

> compelling the State, [the company], and [A.B.] to produce records or monthly spreadsheets pertaining to the period from July, 2017, through December, 2020, compiled from data entered and kept using the BusinessWorks bookkeeping program employed by [the company], that record or reflect all income and deposits from each individual flooring customer account, whether invoiced or not, and how it was allocated.

We call this "the BusinessWorks motion."

¶14    The BusinessWorks motion noted that, at the December 2021 evidentiary hearing, A.B. had testified that his co-owner at the company, identified here as C.D., regularly used a BusinessWorks software bookkeeping program to record information that included invoices, accounts receivable, and allocations of payments coming from customers. The motion further alleged that the company "had a practice during the time [when Tuecke] was employed there of applying un-invoiced cash payments from flooring customers to zero-out inactive accounts of other customers in various departments." Having made those points, the motion acknowledged that A.B. had produced to Tuecke "BusinessWorks records of flooring customer invoices billed and paid," but asserted that A.B. had not produced "BusinessWorks records showing un-invoiced payments or deposits from customers and how they were allocated."

¶15    The apparent import of this additional information for the defense was that it might help show that Tuecke had not kept money that he received from customers for flooring jobs for which no invoice was created. Rather, these additional records could show that he had instead properly turned the money over to the company and that money had been used by A.B. or others to reduce or eliminate debt reflected in the company's records for customer accounts on other jobs, perhaps including non-flooring jobs (sometimes referred to as "zeroing out" the other accounts). As legal authority, the BusinessWorks motion cited WIS.

STAT. §§ 971.23(7) and 971.31, and the Fifth, Sixth, and Fourteenth Amendments to the federal constitution.

¶16 The circuit court took up the BusinessWorks motion at the final pretrial hearing, at which A.B. was present and at times spoke on the record. The court declined to compel the production of any additional records after hearing positions that included the following.

¶17 Although Tuecke's counsel indicated that he could not be definitive, he said that he believed that the banker's boxes produced to Tuecke's prior counsel in response to the circuit court's September 2021 order did not contain "ledgers" showing income to the company. Counsel suggested that Tuecke would testify that the company had a practice of accepting cash payments from customers for which there would not be a recorded "deposit" or "invoice." Counsel further said that Tuecke would testify that "often cash payments would be used to zero out other open accounts of other customers," such as "essentially inactive and uncollectible" accounts.

¶18 A.B. said at the hearing that the company had the following practices when Tuecke was employed there. When a customer made an advance payment to a company representative such as Tuecke, the representative placed the customer's advance payment money in an envelope memorializing a deposit on a job. C.D. would make a corresponding entry in the BusinessWorks program reflecting such a deposit. However, A.B. represented that the company's BusinessWorks records were backed up only two years into the past, which would mean that the only computer records still available would be from October 2020, after the last charged offense in August 2020.

¶19    On a related point, A.B. further said that the company had already printed out the company's BusinessWorks records and included them in the banker's boxes produced to Tuecke's prior counsel.   Tuecke's then-counsel returned the boxes to the company following the December 2021 hearing.  A.B. said that at that point "I probably just shredded [the contents of the boxes], I assume."

¶20    In denying the motion for the production of additional records, the circuit court said,

> It doesn't appear that [production of additional records] would lead anywhere that the absence of records arguments [does not already] lead.  If the State intends to produce something, obviously [the State is] going to need to disclose it….  But I think we are … where we are at with what we have [in the way of production by A.B.], and the arguments [that] both [sides can make at trial] will flow from there.

Consistent with these statements, the court essentially found that the specific BusinessWorks records then sought by Tuecke were no longer available, if they had ever existed.  At the same time, the court made clear that it would not limit Tuecke's ability at trial to make whatever arguments he wanted to make based on the absence of records.

*Trial events*

¶21    Summarizing broadly, during the course of trial A.B. produced additional records, which prompted defense counsel to request further production, as well as a delay in the trial to give counsel time to analyze all new production. The circuit court for the most part denied the requested relief, but granted some relief.  We now explain more fully.

¶22   At the end of the first day of trial, while under cross examination by the defense, A.B. testified in part as follows.  A.B. reviewed company records for the period from January through early March 2020, in connection with the theft alleged in Count Four of the amended complaint.  In the course of this review, A.B. noted that no invoice had been created for this job and also there was no "deposit ticket" reflecting a deposit of cash to the company from that customer. Defense counsel challenged A.B. about whether A.B. had ever produced to the defense records reflecting deposit records pertinent to this testimony.  Defense counsel suggested in his questioning of A.B. that insufficient production of records had unfairly left him unable to show that there had in fact been a deposit of cash recorded for the job involved in Count Four.  The circuit court adjourned trial for the day.

¶23   Out of the presence of the jury, the circuit court made the observation that, "Whatever [A.B.] looked at; we should look at.  If [the records are] in existence."  After a dialog with counsel for both sides and A.B., the court asked A.B. to search for and produce all hardcopy "deposit records you have on the flooring stuff for February and March of 2020."  A.B. volunteered to attempt to obtain and produce bank records showing deposits during that time period and the prosecutor supported this proposal.  The court asked A.B. to bring to court the next morning "whatever deposit records" A.B. was able to obtain for February-March 2020.  A.B. did not object to this request.  Defense counsel also did not object to this course of action.

¶24   At the start of the second day of trial, A.B. produced 215 pages of records.  This included five pages reflecting copies of handwritten entries by the company on bank deposit slips for February-March 2020 ("the February-March deposit slips").  The circuit court noted that the February-March deposit slips were

"informative" on "the narrow question that we [were] left with … yesterday," namely, whether there were records reflecting deposits of payments from the customer corresponding to Count Four. Defense counsel conceded this point, and said, "[W]e can go forward on that." It is undisputed that the February-March deposit slips do not reflect a deposit made during that time period apparently corresponding to specific payments made by the Count Four customer, a fact that tended to undermine the potential defense theory.

¶25 Defense counsel took the following positions. The new production by A.B. amounted to "income records" of the type that, according to counsel, the circuit court had ordered produced in September 2021. Further, even this new production covered only a limited time period. As a result, counsel argued, the circuit court should order A.B. to produce comparable records covering the entire period of the charged offenses and to recess the trial for one month to give the defense time to review those records.

¶26 The prosecution took positions that included the following. The prosecution had complied with all of its discovery obligations and A.B. had complied with all of the circuit court's orders for production—and beyond all that, A.B. had also produced additional materials that he was not ordered to produce. This had included the production, approximately two weeks earlier, involving "tax documents" requested by the defense and all of the records that A.B. was able to produce following a recent prosecution-defense meeting regarding records.

¶27 The circuit court made a determination that, other than the February-March deposit slips, the records newly produced by A.B. did not have the potential

12

to produce probative evidence, perhaps unless either side had retained "a forensic accountant to put all of that together," which neither side had done.[8]

¶28    The circuit court gave defense counsel 30 minutes to review the new production, suggesting that counsel scan the production for the names of the six customers whose jobs were at issue in the six charged counts, to make sure that the records did not contain "anything that is particularly pertinent."

¶29    After that break for review, defense counsel repeated the argument that A.B. should have produced the records earlier and contended that the defense needed similar records "that pertain to the months surrounding" the transactions charged in Counts One and Two.

¶30    The prosecution asked to immediately resume the trial without additional production, making arguments that included the following.  A.B. had satisfied the specific request that A.B. produce the February-March deposit slips— voluntarily taking the trouble to contact and work with a bank representative outside of regular hours—and he had also fully complied with all prior orders and the repeated defense requests over time for records.  "[T]here's a lack of records in this case because [Tuecke] was charged with keeping records, of preparing invoices."

¶31    The circuit court ruled that the trial would immediately resume, with no further required production by A.B.  The court made a broad observation about

_____

[8] It is undisputed that neither side retained an accountant or other expert in a related field to review any of the company's records or opine about allegedly missing records, and Tuecke does not argue that it was constitutionally ineffective for either of his two trial counsel to fail to retain one.

one pertinent defense theory, namely that the company failed to record some cash payments. By definition under that theory, the court said, "there are unrecorded amounts of cash [that are] not going to show up anywhere in" the records of the company—that is, the defense theory involves "a lack of records." The court then provided specific explanations as to why it did not consider additional production to be of any value to the defense on Counts Three, Four, Five, and Six, and suggested that the theoretical chance that production could help the defense on Count One was highly unlikely.[9]

¶32    The circuit court determined that no "sanction" of the prosecution favorable to the defense was warranted. The court observed that the parties and the court "maybe should have" "drill[ed] down" at earlier stages of the case on the topic of the potential for the parties to review "handwritten [bank] deposit receipts." At the same time, the court said, as events unfolded A.B. was not on notice that he was required to produce such records. The court said that the BusinessWorks motion did not require production of records for un-invoiced payments or deposits, which would not have likely yielded probative information in any case. The court also considered it relevant to resolution of these issues that defense counsel would be free to cross examine A.B. regarding the absence of records, including attempting to prove that A.B. "jumped to conclusions" in suspecting theft by Tuecke based on the information that A.B. had reviewed before going to police.

---

[9] As stated above, Count Two is not at issue in this appeal because the jury found Tuecke not guilty on that count.

¶33     The circuit court said that it was not feasible to delay the trial for a month, as requested, and that there were insufficient grounds for the court to declare a mistrial (although there had been no request for a mistrial).[10]

¶34     Defense counsel renewed his argument for additional production by A.B. He repeated the defense theory that, while working for the company, Tuecke was directed not to create invoices for some cash payments and that the company would apply cash to various unrelated customer accounts to address (or "zero out") those accounts. Counsel contended that additional production could help the jury to understand that cash provided by a customer on a given job could have simply passed through Tuecke's hands to the company yet not appear in records corresponding to that job because others at the company had diverted that cash to "zero out" unrelated customer debt.

¶35     The circuit court responded by repeating its reasoning that, absent the retention by either side of a forensic accountant capable of factoring in all relevant details, defense counsel sought the additional production merely to show the company's general "accounting sloppiness or deception," and not to assist the jury in addressing the specific charged offenses. The court made the observation that, at a general level, "evidence of accounting irregularities is exculpatory." But the court added that it saw no reason to think that additional production could accomplish more for the defense than illustrating the same kinds of general "accounting irregularities" for which the defense already had sufficient evidence.

---

[10] Tuecke does not argue on appeal that the circuit court should have granted a mistrial at any point.

## B. Analysis

¶36 We begin by noting that Tuecke's arguments regarding his pretrial and trial motions to compel evidence suffer from a major defect and separately noting that we need not reach one dispute between the parties.

¶37 The major defect in Tuecke's arguments is that he fails to distinguish clearly among the specific rulings of the circuit court that he may intend to challenge and on what specific grounds, while properly taking into account the information that was available to the court at the time it made that specific ruling. As we have summarized in detail above, the court made a series of rulings in response to developments in the case as events unfolded, and we must evaluate each specific ruling (to the extent that Tuecke is in fact challenging it, a point that is not always clear) based on the allegations and the arguments presented to the court at the time it made the ruling.

¶38 We turn to the dispute that we need not reach, which involves Tuecke's contentions that he was entitled to production by the company of all exculpatory records in its possession and that if he did not receive such records the court would need to impose one or more remedies in his favor, such as precluding or limiting A.B.'s testimony or giving defense-favorable jury instructions. The record reflects that the circuit court consistently operated from the premise that Tuecke had these rights and potential remedies. As Tuecke did in the circuit court, on appeal he relies heavily on *Shiffra* and *Green* for these propositions, recognizing that at least some aspects of *Shiffra* and *Green* were overruled by the time of briefing in this appeal. *See Johnson*, 407 Wis. 2d 195, ¶1 & n.3. For these reasons, we assume without deciding in Tuecke's favor all of the authority that he purports to derive from *Shiffra* and *Green*, post-*Johnson*.

16

¶39    With those two clarifying points in mind, we interpret Tuecke's arguments on appeal to boil down to the proposition that, in one or more rulings, the circuit court denied him access to records necessary to prepare his defense, including all exculpatory records, which would be a claim rooted in the Confrontation Clause. *See Ritchie*, 480 U.S. at 51 (the Confrontation Clause guarantees a defendant the right physically to face those who testify against the defendant and the right to conduct cross-examination; addressing Ritchie's argument that he was denied "access to the information necessary to prepare his defense").

¶40    We now address each potentially pertinent ruling made by the circuit court and explain why we conclude that Tuecke fails to show any of the following: an error in interpreting or applying relevant legal standards; a clear error in relevant fact finding; or an erroneous exercise of the court's discretion in resolving any discovery-related issue. *See Hughes v. Hughes*, 223 Wis. 2d 111, 120, 588 N.W.2d 346 (Ct. App. 1998) (de novo review applies to the interpretation or application of a legal standard); *Langlade Cnty. v. D.J.W.*, 2020 WI 41, ¶¶24-25, 391 Wis. 2d 231, 942 N.W.2d 277 (a circuit court's findings of fact are upheld unless they are clearly erroneous); *Nickel v. Wells Fargo Bank*, 2013 WI App 129, ¶105, 351 Wis. 2d 539, 841 N.W.2d 482 (circuit court rulings concerning discovery issues are generally reviewed to determine whether the court has erroneously exercised its discretion).

¶41    Tuecke apparently does not allege error of any kind in connection with the circuit court's September 2021 order granting Tuecke's motion requiring A.B. to produce the records identified *supra* in note 5.  We note that the category of required records production that would later become an issue for the defense, "[i]ncome and [e]xpense records for the flooring division," is limited to the

17

company's flooring records, not to other products or services sold by the company, and therefore did not place A.B. on notice of the need to produce other records. This was despite the fact that Tuecke would later assert that one defense theory was that, while working at the company, he had deposited with the company customer payments on flooring jobs and those funds were then used by others at the company to settle accounts on non-flooring jobs. Further, the phrase "[i]ncome and [e]xpense records" is not defined and it could have various possible meanings in terms of scope and amount of required detail. In short, the court gave the defense precisely the pretrial production order that it was asking for, and Tuecke at no point raised with the circuit court any purported shortcoming with the form or substance of the September 2021 order.

¶42    Turning to Tuecke's November 2021 motion for an order prohibiting or limiting A.B.'s trial testimony based on the purported absence of income or expense records, Tuecke cannot be heard now to argue that the circuit court committed any error in connection with the results of that motion. A.B. testified at the December hearing that he took extensive steps to comply with the September 2021 order, producing six boxes containing records. At this hearing, the prosecution committed to obtaining further records from A.B. for production to Tuecke. Defense counsel told the court that there was not "anything else" that could be accomplished.

¶43    Shortly before trial, the circuit court took up the BusinessWorks motion and denied it based on the court's factual findings and implied findings. For reasons we now explain, Tuecke fails to develop either an argument that the circuit court clearly erred in making relevant findings or an argument that the court could not reasonably rely on those findings to deny the BusinessWorks motion.

18

¶44    To repeat, the BusinessWorks motion sought production of company records from the BusinessWorks program reflecting "all income and deposits from each individual flooring customer account, whether invoiced or not, and how it was allocated." The motion acknowledged that A.B. had produced "BusinessWorks records of flooring customer invoices billed and paid," but Tuecke now sought "BusinessWorks records showing un-invoiced payments or deposits from customers and how they were allocated." The court found that the records sought by Tuecke, if they ever existed, were no longer available and that it would therefore not accomplish anything for the court to issue an additional production order to A.B. The court implicitly credited all of the statements that A.B. made on these topics, including his assertion that, to the extent there had been relevant BusinessWorks records that had not been produced to date, they were no longer available. Tuecke's briefing does not identify clear error in the court's findings or provide us with a reason to conclude, based on the record as it then existed, that the court misapplied any legal standard in denying the motion.

¶45    Turning to trial events, as summarized above, at the end of the first day of trial, the defense cross examination of A.B. attempted to raise a production issue. The circuit court directed A.B., with no objection by the defense, to produce "whatever deposit records" he could, but solely for the February-March 2020 period. Further, with the encouragement of the prosecution, A.B. went beyond this to volunteer to attempt to obtain and produce bank records showing deposits during that time period. The next morning, going well beyond what was agreed to the day before, A.B. brought to court extensive records, including the February-March deposit slips. The court noted, and defense counsel agreed, that the February-March deposit slips resolved the issue that had arisen at the end of the first day of trial.

19

¶46    After the circuit court gave defense counsel an opportunity (albeit brief) to review the larger production, defense counsel argued that the records should have been produced in response to the September 2021 order and contended that the defense needed similar records "that pertain to the months surrounding" the transactions charged in Counts One and Two.  Defense counsel also argued for the production of comparable records covering the entire period of the charged offenses, which was inconsistent with his request limited to the timeframes of Counts One and Two.  Counsel further asked the court to recess the trial for one month, which he contended was necessary to give the defense time to review those records.

¶47    After considering extensive arguments by both sides, the circuit court ruled that no further production by A.B. was required and that therefore there was no need to recess the trial.  The court's reasoning included the following points:

- Perhaps the parties and the circuit court mutually missed an opportunity at earlier stages of the case to raise the idea of seeking handwritten bank deposit receipts, which was a category of record that had not necessarily been in the immediate possession of the company or A.B.  But as events unfolded, A.B. was never on notice that he had to seek out or produce such records.  The court suggested that Tuecke was too late in raising the need for bank deposit receipts for the first time at trial.

- In a related vein, neither side had retained a forensic accountant.  Implied in the circuit court's comments were determinations that such expertise was necessary to:  (1) identify what records, such as bank deposit receipts, that the defense needed in order to trace, dollar for dollar, what customer payments in the charged transactions appear to have been reallocated by the company or instead might have been allegedly pocketed by Tuecke; (2) establish whether there were "accounting irregularities" in the company's records or practices relevant to the charged transactions; and (3) perform these assessments in a reliable manner.  Without a defense expert to rely on or a prosecution expert to challenge, the defense requests for additional

records were not justified because they would not have meaningfully helped the defense.

- The BusinessWorks motion did not call for production of BusinessWorks records for un-invoiced payments or deposits, which would not have likely yielded relevant information in any case.

- Defense counsel would be free to cross examine A.B. regarding the absence of records, which would accomplish the gist of what the defense might be able to show to advance its theories. The circuit court acknowledged that "evidence of accounting irregularities is exculpatory." However, the court noted that a primary defense theory that had emerged at trial was that the company had failed to record some cash payments, and additional production was not going to reveal cash payments that were not recorded.

- The circuit court provided specific explanations as to why it did not consider additional production to be of any value to the defense on Counts Three, Four, Five, and Six, and of very little value on Count One.

¶48 Tuecke fails to develop an argument that the circuit court erroneously exercised its discretion in declining to grant a recess in the trial of any length—including the notable length of one month—if the court properly denied the motion for additional production. That leaves the argument that the court should have ordered additional production, based on the circumstances that existed at the time it made this ruling.

¶49 The extensive record summarized above demonstrates that the circuit court carefully considered and repeatedly accommodated in reasonable ways the multiple, shifting defense requests for production from A.B. between the time the case was charged and the jury trial. As of the time of trial, the court was presented with what amounted to a tardy demand for various sets of additional records for which the court had a reasonable basis to conclude that Tuecke failed to provide sufficient justification under the circumstances, accompanied by the

request that the court recess the trial for a full month. The court was also presented with unrebutted assertions by A.B. that he had already produced the requested records and that computer records were no longer available. Tuecke fails to show an error in interpreting or applying any relevant legal standard, a clear error in relevant fact finding, or an erroneous exercise of the court's discretion in resolving a discovery-related issue. We now explain why we reject Tuecke's specific arguments to the contrary.

¶50 Tuecke repeatedly makes an argument that distorts the record. He argues that the circuit court's ruling at trial denying his motion for further production by A.B. was a decision to allow "partial production" that unfairly bolstered A.B.'s credibility and diminished Tuecke's credibility. This argument is based in part on the fact that February-March deposit slips do not reflect a deposit made during that time period that appeared to correspond to payments made by the customer, undermining one potential defense theory. The false premise in this argument is that the situation here was akin to one in which the circuit court was presented with a known set of records and decided to admit only the inculpatory ones and exclude the exculpatory ones. Instead, as summarized in detail above, the court made reasonable rulings regarding what A.B. could be ordered to produce under fluid circumstances. Under these circumstances, it was unclear what additional production might yield or how it might help the defense, and the court gave the defense free rein to challenge the State's investigation based on the lack of additional records.

¶51 Tuecke asserts that A.B. "never produced" "[i]ncome and expense records for the flooring division" for the period January 1, 2018, to August 25, 2020. But as noted, the circuit court consistently credited representations made by A.B., which for the most part were not questioned by defense counsel over the

course of multiple hearings in the circuit court. A.B.'s representations included the following at the pretrial hearing addressing the BusinessWorks motion. Income and expense records covering the flooring end of the business, as identified in the September 2021 order, were in fact produced to the defense in six boxes; the defense returned the boxes (which were then destroyed, because the defense did not want them any longer, apparently without either side making copies or a record of what the boxes contained); and computer records dating to the relevant period were no longer available. This provided the circuit court with an adequate basis to conclude that sufficient relevant records had been produced, consistently in the manner in which the defense had explicitly sought them.

¶52    On a related point, Tuecke does not acknowledge the limited and somewhat ambiguous nature of the September 2021 order that he successfully sought as compared with the broadly defined requests he was making at the time of trial. Over the months before trial, the circuit court responded appropriately and attentively to defense arguments that there were gaps in the production that could be exculpatory. By the time of trial, however, the court determined that no more exculpatory material could be produced.

¶53    Tuecke asserts that the circuit court denied him "the opportunity to present a defense that falsely-attributed cash payments over time accounted for the cash amounts [that he] received from" the customers in the transactions corresponding to Counts Two and Four. But Tuecke fails to come to grips with the circuit court's assessment that, in order for the defense to have the prospect of mounting a meaningful defense along these lines, there needed to be an accounting expert of some kind for the defense to depend on, or at a minimum to challenge, regarding dollar-for-dollar tracing of funds. At no place in Tuecke's appellate

23

briefing does he refer to this rationale, which the court referenced multiple times in making the challenged rulings.

## II.    POST-TRIAL MOTION TO COMPEL PRODUCTION

¶54    After sentencing in November 2022, Tuecke filed a motion seeking an order compelling the production of five categories of records allegedly in the possession of the company.  The circuit court denied this motion in its entirety, explaining its reasoning in an extended oral ruling.

¶55    "[A] defendant has a right to post-conviction discovery when the sought-after evidence is relevant to an issue of consequence." *State v. O'Brien*, 223 Wis. 2d 303, 321, 588 N.W.2d 8 (1999).  Evidence is consequential in this context "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 320-21.  "'The mere possibility that an item of undisclosed information might have helped the defense ... does not establish "a consequential fact" in the constitutional sense.'" *Id.* at 321 (quoting *United States v. Agurs*, 427 U.S. 97, 104, 109-110 (1976); alteration marks omitted).  It is the defendant's burden to meet this standard, and the circuit court's ruling is reviewed for an erroneous exercise of discretion.  *See id.* at 320 (favorably noting that the court of appeals applied that standard in the opinion under review by the supreme court).

¶56    We conclude that the circuit court provided strong support for its decision, with observations that included the following.  Whether the additional, post-trial production sought by Tuecke would have produced "three pages of business records" or instead 3,000 pages, a new trial of the case would still amount to only this:  A.B. would discuss the records and the issue of "unrecorded cash" "in a way that supports the State's theory of the case" and Tuecke would discuss

the records and "unrecorded cash" "in a way that supports his view of the case"—with the credibility of these two witnesses being the deciding factor for the jury.

¶57    The circuit court noted that the defense at trial was able to make some "inroads" in impeaching A.B. regarding the company's record keeping and how the company managed "unrecorded cash." Thus, the additional production would likely result in impeachment evidence that could have provided at best only slightly more support for the defense than what was already available. *See State v. Hineman*, 2023 WI 1, ¶31, 405 Wis. 2d 233, 983 N.W.2d 652 (stating that "[i]mpeachment evidence is cumulative and therefore not material when 'the witness was already or could have been impeached at trial by the same kind of evidence'" (citation, brackets, and footnote omitted)).

¶58    The circuit court noted that the defense had the benefit of extensive production by A.B. on behalf of the company, some of which the defense used at trial to dispute charges, but in the end the jury "didn't buy it." It would be mere "conjecture" to conclude that some sort of "smoking gun" for the defense might be found in further production. We interpret the court to have used the term "smoking gun" as shorthand for evidence creating a reasonable probability of a different result on any count.

¶59    The circuit court concisely summarized evidence regarding all counts except Count Two, on which Tuecke was acquitted, and explained why additional production would be unlikely to be consequential on any of those five counts.

¶60    To the extent that Tuecke's arguments on this issue are not already rejected in our discussion above, they are largely rhetorical and in any case insufficiently supported. For example, he premises his argument in part on what

he asserts was "delay and distraction" by A.B. in producing records, but the record summarized above shows that the circuit court credited A.B. with making repeated, timely efforts at production based on the nature of the requests actually made. Tuecke also asserts that the post-trial production he requested would have resulted in exculpatory records on Counts One and Four, but he fails to persuade us that the circuit court's close analysis regarding those counts was incorrect.

## III. OTHER POST-TRIAL MOTIONS

¶61 Tuecke filed a notice of his right to seek postconviction relief, followed by a motion for a new trial or judgment notwithstanding the verdict, seeking orders vacating all of the counts of conviction.

¶62 Regarding the motion for judgment notwithstanding the verdict, after the State cites authority for the proposition that such a motion is for use in civil, not criminal, proceedings, Tuecke fails to reply, conceding the point. *United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in respondent's brief may be taken as a concession). Similarly, Tuecke invoked WIS. STAT. § 805.15(1) as a basis for a new trial in his motion in the circuit court and he refers to it again now on appeal. But after the State points out that under *State v. Henley*, 2010 WI 97, ¶¶66, 70, 328 Wis. 2d 544, 787 N.W.2d 350, "[Section] 805.15(1) is not a proper vehicle for a criminal defendant to seek a new trial in the interest of justice" because it is a civil statute not applicable to criminal cases, which would render the limitations under WIS. STAT. §§ 974.02 and 974.06 irrelevant, Tuecke also fails to reply.

¶63 This leaves, as a request for relief under WIS. STAT. § 974.02, Tuecke's challenge to the circuit court's denial of his motion for postconviction

relief, which essentially repeats arguments that we have already addressed in detail. We add only the following. Tuecke makes two fundamental errors in arguing that A.B. "was rewarded for his dilatory, if not dishonest, failure to produce records." First, this was not a lawsuit between A.B. or his company and Tuecke. The issue is not what A.B. deserved. Instead, the issue is whether the circuit court properly responded to the various production issues as they arose, based on the specific arguments made by the parties and the information then available to the court. Second, Tuecke fails to direct us to a circuit court finding that A.B. was either dilatory or dishonest, which would increase the likelihood that additional, post-trial production was warranted. To the contrary, the court's findings and actions suggested that the court considered A.B. to be responsive and honest in connection with the various production requests.

## CONCLUSION

¶64    For all of these reasons, we affirm the challenged rulings of the circuit court.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.